First from Mr. Waddell. Thank you, Your Honor. I am Bill Waddell, and it's my privilege to represent James Smith today. He appreciates the court granting oral argument. May it please the court, we are here seeking reversal of an order dismissing his section 1983 complaint based on race judicata and collateral estoppel. The court may appreciate that the facts are very brief in this kind of procedural appeal, but Mr. Smith had filed a claim before the Arkansas Claims Commission alleging negligence against the Arkansas Department of Correction. That claim was denied. He followed that with a section 1983 action against the appellee, Sammy Johnson, in his individual or personal capacity. And the state, excuse me, representing Mr. Johnson, Ms. Hodge, filed a motion to dismiss saying it was barred by collateral estoppel and race judicata, relying on Steffen and Price v. Campbell. And the district court, it was first submitted to the magistrate who originally denied the motion. Recommended denial. Recommended denial. And Judge Marshall of the district court did not accept that recommendation. And then the recommendation was changed to dismiss it based on race judicata and collateral estoppel. And that recommendation was accepted by Judge Marshall. Mr. Smith, my client, objected to those recommendations as to collateral estoppel and race judicata, arguing that the Claims Commission did not have jurisdiction to entertain the claims under Section 1983 in the Eighth Amendment and against Mr. Johnson in his individual capacity. So in denying the... So is there any support for that proposition, that the ACC doesn't have jurisdiction over the Eighth Amendment claim? By statute, it cannot address any claims except those against the state or its entities. Well, wouldn't the Eighth Amendment claim be a claim against the state? Under Section 1983, that's a claim of an individual acting under the color of state law, violating the Eighth Amendment. At least that's the claim in the complaint, right? Is that what you mean? That's the distinction. I think legally, though, Your Honor, that is a distinction that's recognized by some of the cases that we've cited. And what we've tried to do is to show the difference between the claim against the state and the Eighth Amendment claim under Section 1983 with this Brennan v. Farmer case that's relied upon in the New York case where you used Pack v. Artuse. So on the race judicata claim, if I may, to address that is that we think that the district court understood our argument that there was no jurisdiction because the court said if there's no jurisdiction, as Mr. Smith contends, then it's barred by collateral estoppel. And we've tried to cite to the court a number of cases by this court that would suggest that a suit against someone in its official capacity does not bar a claim against someone in the individual capacity. And so Irving v. Dormeyer and Headley v. Bacon and Vogel v. Turner is a Minnesota district court case that takes both of those and talks about them. But Irving and Headley are this court's decisions. And they explicitly say that a suit against someone in an official capacity does not bar relitigation against that person in a personal individual capacity. So we think that those cases stand for the proposition that race judicata should not be here because it's not the same parties in their privies, which is one of the allegations or one of the requirements, essential elements of race judicata. There was no jurisdiction, which is another one of our arguments that we have addressed briefly, and that the 1983 Eighth Amendment claims were not actually litigated. So those are three of the four elements of race judicata that we believe were not met here, particularly on a motion to dismiss under 12b-6. So I say those things because I believe the district court, in his order, which is at page 108 of the appendix, understood this jurisdictional issue that I'm raising and focused primarily on the collateral estoppel issue. And I would suggest to the court, to this court, that although district courts have addressed this, this issue of collateral estoppel in this situation, that I'm not sure that the Eighth Circuit has addressed this. So this may be an issue of first impression in the way we've articulated this case. The first argument we make on collateral estoppel is that it's not the same issue that was discussed and tried before the Claims Commission because there's different elements, and this gets to that Farmers v. Brennan case that we have cited, and that's discussed in the Pat v. Artux's case, and that's a district court from New York. And I realize that's not binding in any way, but we believe that the court there, actually the magistrate's recommendation is more detailed, and it's accepted by the district court, that it very well deals with all of the issues that would say collateral estoppel should not apply here. It's two different claims, two different issues. The elements of an Eighth Amendment claim, in the context of Section 1983, are different than the negligence claim presented against the state. Well, now, in those proceedings before the commission, does the commission evaluate whether the officials, the individual officials, were negligent when it decides whether the, quote, respondent was negligent? It's not clear, but they can't. What else could it do? In candor, they did testify and were witnesses. So they must be evaluating negligence by the employees, right? Perhaps not specifically. And which ones, we don't know. But the record does reflect that Mr. Johnson, the appellee, did testify. So you could infer, Your Honor, that his actions were evaluated for negligence. Well, is there an argument that if the commission found he wasn't even negligent, then that precludes you from arguing that you can meet the even more demanding standard of deliberate indifference? What do you think about that? I don't believe that that precludes the opportunity, particularly since Mr. Johnson was not the focus of Mr. Smith's claim. It was broader. What do you mean? It was broader. The claim brought before the Arkansas Claims Commission was that Mr. Johnson allowed another inmate named M. Johnson to attack him with a lock and leave him permanently disfigured, all the damages he alleges, and that Dobbs, who was also sued in this particular case, did not do anything to stop it. Right. So if the commission found, just assume with me for a minute, that the commission found Johnson, your man Johnson, was not negligent, the correctional officer, was not negligent in protecting the plaintiff, why shouldn't that preclude you from now arguing that not only was he negligent, but he was deliberately indifferent? I don't believe that is preclusive, particularly when Johnson was arguably not the focus. It was the hope. So I'm asking you to assume for a minute that he was the focus. That that's the only evidence? That that would be the only evidence? No, that that was the finding, that Johnson was not negligent. If that's how we interpret this order, then what's your position? I still don't believe that it satisfies the Eighth Amendment claim. The two elements are different. They are different. I'm just wondering if one is sort of a lesser included, if you will. I understand the court's question. Do you see any authority on that? I don't have any authority for the court's position, but I have. No, one way or the other. I think the Pack v. Artoo's case would do that. And also, one case that I cited but I hadn't developed for the court was Perkins v. Hughes, which was an Eastern District of Arkansas case where it was not clear what was actually decided before the Arkansas Claims Commission. They denied preclusive effect. And I think that case, although I don't even have a copy of it to read to the court, but that is what that case held, and that was from the Eastern District of Arkansas, Perkins v. Hughes. And I think Pack v. Artoo's addresses the same issue. So the second part of collateral estoppel, which I think is significant, is that did the inmate have a full and fair opportunity to litigate the claims under Section 1983 and the Eighth Amendment against Johnson in the Claims Commission? And the Attorney General's Office took the position there was no jurisdiction to deal with those constitutional claims. Of course, that motion was denied, right? It's difficult to know, Your Honor, from the record. They filed two motions to dismiss. One was denied. It's not clear to me whether the one related to jurisdiction was denied or not. I cannot tell that from the record. But there is an order denying the motion. And there's two separate motions filed on two separate days, and I'm not sure if the order covers both of them or not. But the issue is, did he have a full and fair opportunity to litigate the 1983 claims and the Eighth Amendment claim as a part of that against Johnson? And we submit he did not. We've cited a number of cases on this. The Pack v. Artoo's case is a good case to summarize all of the decisions, but we also cite United States Supreme Court decisions that talk about this context of litigating that kind of a claim. So I know I'm into my rebuttal time, but those are the basic issues that we urge for reversal. And we think that on race judicata that the court would have to ignore some of its other decisions, Irving v. Dormeyer and Hedley v. Bacon, and that the Stephan and Williams cases on which the court relied below do not address the specific facts of this. So they need not be overruled as a general proposition, but they need to be distinguished in our view. Thank you. Thank you very much, Mr. Waddell. We'll next hear from Ms. Hodge. Thank you, Your Honor. Good morning. I'm Katina Hodge from the Arkansas Attorney General's Office, and I have the pleasure of representing the appellees in this matter who urged the court to affirm the district court's dismissal of Mr. Smith's 1983 cause of action because collateral estoppel bars him from relitigating the issues that were presented admittedly before the Arkansas Claims Commission. The appellees submit that the doctrine of collateral estoppel is wholly dispositive of Mr. Smith's 1983 claim, and so therefore it's not necessary for the court to decide the issue of race judicata in order to affirm. Now, the district court did adopt the magistrate's recommendation who recommended dismissal of the complaint both on race judicata and collateral estoppel, and that recommendation is wholly adopted with one supplement, and that is Judge Marshall does point out that even if the Claims Commission didn't have jurisdiction, then collateral estoppel would still bar the cause of action, and the appellees agree with that. The appellees, however, assert that they are entitled to dismissal of the 1983 action under both doctrines. There seems to be less confusion about the collateral estoppel, which is the only reason I say that the court could dismiss it. What issue do you think was resolved by the commission, and how does it preclude the current lawsuit? Can you address that? I can. I will, Judge Colleton. Mr. Smith's argument that the Claims Commission did not address the specific elements of a Farmer v. Brennan type Eighth Amendment claim misunderstands the way this court defines a similar claim or cause of action under race judicata and the way their court analyzes whether or not an issue is identical or the same under race judicata and collateral estoppel. In Lane v. Peterson and United States v. Gurley, which is a precedent from the Eighth Circuit, the court says we don't look at the legal theory. We don't look at the substantive law. We don't look at how the claimant defined that particular legal cause of action. We look at the specific facts, and the court said if the nucleus of operative facts are the same in the first action and the second action, then the second action is barred under race judicata because they present the same claims or causes of action, and under collateral estoppel it would be barred because the court would consider that the appellant had presented the same issue. Would that be true if the ACC didn't have jurisdiction, which was your position at least early on? The ADC did take the position, not the Attorney General's Office. The ADC did take the position that the court didn't have jurisdiction over the 1983 elements, but the elements aren't what's important. It's the facts, and so those positions are consistent. I'm sorry. Go ahead and finish your answer. Those positions are consistent from the standpoint first it's important to note that the claims commission denied the motion to dismiss, and so the logical conclusion is the claims commission agreed that it had jurisdiction over the specific issues raised in the case. The issues were personal injury, loss of property, and failure to follow policy, which resulted in a personal injury. Yeah, that's what was kind of confusing. The first opinion says types of claim, failure to follow procedure, loss of property, and then the reconsideration says personal injury, loss of property. So what was actually litigated, and how do we know that? We look at the record, and we look at the documents submitted by Mr. Smith. He filed a complaint, an amended complaint, and a brief supporting his amended complaint, which is in the record at, let me glance at my note, I believe it's appendix page 74, and his arguments were that Sammy Johnson and other ADC officials violated ADC policy when they reassigned him from one area of the prison to general population, which resulted in his personal injury, i.e., the attack at the hands of inmate Johnson. He received a disciplinary action in the course of the investigation for engaging in a fight with another inmate, and he was assigned to punitive segregation, and as a result of that disciplinary action, he lost some property. So both of those orders represent the three issues in totality that were addressed before the Arkansas Claims Commission. The violation of policy allegation, which he says resulted in him being attacked, which is the personal injury aspect, and then the disciplinary action, which resulted in his loss of property. So we know from Mr. Smith's own pleadings, his amended complaint, his brief in support in the Claims Commission, that all of these factual allegations that appear in the 1983 action were those things that the Claims Commission was considering in his first cause of action. Because this court doesn't take an elemental approach, that is, it's not necessary for the court to decide whether the specific elements of an Eighth Amendment cause of action were actually decided, then res judicata and collateral estoppel bars this cause of action. Just by way of example, in Lane v. Peterson, the Lanes brought one cause of action against the defendants, and they alleged a violation of state law. It would be similar if Mr. Smith had filed a claim in the Arkansas Claims Commission for state law negligence. That case was dismissed. The Lanes then filed a second cause of action alleging violations of federal law, specifically the Securities Exchange Act and RICO. And this court said, we don't care what label they put on their different causes of action. You can't redress your facts and call them something different to preclude or to get around res judicata. And this court found in Lane v. Peterson that notwithstanding the fact that the Lanes had initially alleged violations of Arkansas law, a breach of contract and breach of fiduciary duty in the first instance, and violations of federal law in the second instance, that res judicata and collateral estoppels still barred that second cause of action. What issue is it that you think the Commission resolved that supports your collateral estoppel? Whether or not Mr. Johnson, the issue of personal injury. Whether or not Mr. Johnson, specifically as it relates to the Appalese, whether or not Sammy Johnson was responsible for Mr. Smith's personal injury, which occurred because he was attacked by another inmate. What do you mean by responsible? That was the issue they decided, whether he was, quote, responsible? Well, I'm using that in whether he was negligent. So you think they decided whether he was negligent in a manner that caused Smith to be injured by the other inmate? Absolutely. Where do you get that out of this order dated January 11th, the findings of fact? The findings of fact from the Claims Commission indicate that the respondent, I'm sorry, that Mr. Smith had failed to prove by preponderance of the evidence that the respondent was negligent. And because we know from the two orders that they were considering the issues of personal injury, denial of property, and violation of policy that they necessarily, and also because we can review Mr. Smith's specific allegations, we know that they were necessarily considering those issues. In Irving v. Dormier on the issue of collateral estoppel, this court opined that in order to satisfy whether or not an issue was actually litigated, we only need to determine whether or not there was an opportunity to present it and whether or not the court necessarily considered the issue. In Irving v. Dormier, the inmate filed a motion for habeas that was denied as untimely. And he filed a motion to reconsider that, mentioning that the reason his habeas petition was untimely was that he was denied access to legal materials. The court affirmed its original order denying the habeas petition, and this court said the court necessarily considered the inmate's arguments on denial of legal materials because they affirmed their original order. And so the court said even if they didn't expressly state it in the order, we can conclude that they necessarily considered it by virtue of not changing their position on the first order, denying the habeas petition as untimely. Your Honor, you'd ask Mr. Waddell a question about whether or not the ACC evaluated the employee's actions, and they most certainly did. Mr. Johnson is the subject of the appellant's claim in the Arkansas Claims Commission almost entirely. If you read his brief in support of his complaint, he attributes his injuries at the hands of the inmate to Mr. Johnson's decision to move him from one area of the prison to general population. Mr. Johnson is a witness on behalf of the state, testifies at the Arkansas Claims Commission, and Mr. Smith's grievances, which make Mr. Johnson the subject of his cause of action both in the Arkansas Claims Commission, make certain that his grievances are about Sammy Johnson's conduct. Does the record contain any transcripts of the testimony? It does not. Is Mr. Smith required to go to the Arkansas Claims Commission to exhaust his remedies? He is not. In fact, he could have first filed this lawsuit if he wanted, if he truly wanted to bring a 1983 cause of action. Mr. Smith most certainly had the ability to first file his cause of action without going to the Claims Commission, but he chose to go to the Claims Commission, and he's dissatisfied with that result. I'd like to point out that this court has had the opportunity or the occasion three separate times to consider cases just like this one procedurally, where Arkansas inmates first go to the Arkansas Claims Commission and then subsequently file these 1983 causes of action. And this court has affirmed dismissal of those on all three occasions. Steffen v. Housewright, Price v. Harris both dealt with collateral estoppel, where an inmate at first sought recovery for loss of property, dissatisfied with the amount of money that the commission awarded, came to the Eastern District of Arkansas. Those district courts dismissed those decisions, and this court affirmed. More importantly, Williams v. Campbell dealt specifically with the issue of res judicata, where the inmate was employed in the Wrightsville Unit's garment factory or furniture factory, and he severed his thumb. He filed a claim in the Arkansas Claims Commission for personal injury. Here, Mr. Smith has a similar personal injury because he's seeking damages for injuries to his person. He recovered $5,000. He then filed a 1983 cause of action alleging constitutional claims, and this court said that he could not relitigate those issues, and the court actually called the ADC administrators and supervisors who were sued in that second cause of action privities. I want to address the privity issue really quickly. The appellees don't read this court's decision in Headley v. Bacon or Howell, which is a Fifth Circuit decision, versus Adams as absolutely precluding a non-party from being a privity with one in the first action. There are some distinctions in our case from both the Headley and the Howell decisions. One, the court thought it important in the Headley v. Bacon case, which involved a Title VII and a 1983 action, that the remedy sought and the two different proceedings were different. In Headley, the plaintiff in the Title VII action is seeking only equitable relief, and she was seeking monetary damages against the individuals in the 1983 case. That's not the issue here when you're comparing claims commission versus district court. Mr. Smith is at all times seeking money damages in both the claims commission and in district court. I think it's important that in the claims commission, he sought damages for facial disfigurement, medical, mental health, and the amount of $250,000. His 1983 action seeks those same damages almost down to the dollar. What about the fact that the order, as Judge Grunder said, refers only to failure to follow procedure and loss of property? In other words, it doesn't refer to the claim that the defendant caused the personal injury? The motion to reconsider does. I think we can infer that after that order comes out, Mr. Smith filed a motion to reconsider. That second order couches the claims for personal injury and property loss, and it denies Mr. Smith's claim. Well, it denies his motion to reconsider. For failure to submit evidence that wasn't. So the claims commission has said, we already heard the evidence on all of these issues, and we don't need to reconsider them on the personal injury, the property, and the failure to follow policy. How can they decline to reconsider something that they didn't decide in the first place? It's our position that they did. I think that they did, that Mr. Smith's claims, I mean, that was the subject of his action, is that he was injured at the hands of an inmate. I think the record supports. So you just think they misspoke in the first order and didn't? Yes, Judge, and then on the motion to reconsider, they clear it up on that second order. The basis of the, I'm sorry, Judge. Is the failure to follow procedure related to the personal injury? Absolutely, and I'll try to be clear to articulate that. Mr. Smith's position was that Mr. Johnson failed to follow procedure when he moved him from an area where he was not housed with other inmates and placed him in general population. As a result of that failure, Mr. Smith said he was attacked by an inmate. Okay, so that was the theory of his personal injury. Yes. Was the failure to follow procedure. So if we look at his complaint, we're going to see that. Yes. Okay. And you'll see it in the Claims Commission, and you'll see it both in the district court. Could the failure to follow procedure relate to the loss of property too? I'm not sure. I believe the loss of property was related to the fact that he got a disciplinary. And when inmates get disciplinary, their property is removed if they receive punitive sanctions. That's the way I understood Mr. Smith's claims in the Claims Commission. I'm out of time. Thank you very much. Thank you very much, Ms. Hyde. Now I'm going to hear from Mr. Waddell in rebuttal. And Mr. Waddell has about how much time? Almost three minutes. Three minutes. I was looking hurriedly at what we have in the record about what happened before the Claims Commission. And, frankly, I don't see the complaint. There is a brief in support of the complaint, but I don't see the motion for reconsideration. There is an order denying the motion for reconsideration. I suppose that what I see. Is she correct that the theory behind the personal injury claim was, at least in part, the failure to follow procedure? That's what I was looking for, because there is this brief that is at page. . . It's actually in the district court record. It's at page 45 of the appendix. We don't have, to my knowledge, in the record, the things that she was suggesting. If you read what he says in the district court, in his brief in support of his complaint, the procedure is part of the issue, at least at the district court level. What I was trying to get to with this point is, this is why the Perkins v. Hughes case occurred to me. I thought it had more importance than I thought, because in that case, Judge Jim Moody said that the prisoner's 1983 claim against the prison officials in their individual capacity was not precluded by the earlier Claims Commission action, because, and this is the quote, it is not clear whether the issue the Claims Commission addressed was identical to the one raised in this lawsuit, nor is it clear whether there was a final judgment on the merit of Plaintiff's claims. That, to me, seems to be significant. Well, what's unclear here? There was a final judgment, so that part's not . . . It wasn't there, isn't that clear? It's what was decided, I think. What was decided is unclear. It's unclear. Because they might have just said that somebody else was not negligent, or that Johnson was . . . Why isn't it clear that they said Johnson was not negligent in allowing the other inmate to harm Smith? Well, I don't know, Your Honor. I think the answer is we don't know. And the reason that's important is there's a presumption that it's not decided, which we've cited in some of our papers here. We think the court's question appropriately takes the position that perhaps it's subsumed. I understand the court's question, but I don't think that the record before the court, or before the district court, would tell us what was decided, what was actually decided. That's why I think that Perkins v. Hughes, which is a district court opinion, and Pack v. Artuse, which is a New York district opinion, are both helpful. The U.S. v. Gurley case is a race judicata case. It's different from the collateral estoppel issues that we were raising. I appreciate the court's time. My time is up, and I appreciate your consideration. Thank you very much, Mr. Waddell. That brings, I guess, the arguments in this case to a conclusion. We thank you both for your attendance here this morning, and we'll take the case under advisement and render a decision in due course.